IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TIFFANY M. R.,[1] )
 )
      Plaintiff, )
 )
vs. ) Civil No. 18-cv-1108-CJP[2]
 )
COMMISSIONER OF SOCIAL )
SECURITY, )
 )
      Defendant. )

## **MEMORANDUM and ORDER**

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying her application for Child's Insurance Benefits (CIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## **Procedural History**

Plaintiff applied for benefits in February 2014. She amended the alleged date of onset to April 10, 2014. After holding an evidentiary hearing, ALJ Joseph L. Heimann denied the application on June 23, 2017. (Tr. 20-30). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] In keeping with the court's recently adopted practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 9.

## Issues Raised by Plaintiff

Plaintiff raises the following issues:

1. Whether the ALJ erred by failing to account for moderate deficits of concentration, persistence, or pace in the residual functional capacity finding;

2. Whether the ALJ erred in failing to identify and reconcile apparent conflicts between the testimony of the vocational expert (VE) and the *Dictionary of Occupational Titles* (DOT); and

3. Whether the ALJ erred by failing to make a finding regarding whether the VE's job incidence estimate was credible testimony or based on a reliable source.

## Applicable Legal Standards

To qualify for CIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[3] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing

---

[3] The statutes and regulations pertaining to Disability Insurance Benefits are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. For child disability benefits, a claimant can obtain benefits based on her parents' earnings records if she is 18 years or older and has a disability that began before the age of 22. 20 C.F.R. § 404.350. Most citations herein are to the DIB regulations out of convenience.

significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009).

If the answer at steps one and two is "yes," the claimant will automatically be

found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is

taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Murphy v. Colvin,* 759 F.3d 811, 815 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### **The Decision of the ALJ**

ALJ Heimann followed the five-step analytical framework described above. He determined that plaintiff had not been engaged in substantial gainful activity since the alleged onset date. The ALJ found that plaintiff had severe impairments of bipolar disorder, attention deficit hyperactivity disorder, borderline personality disorder, major depressive disorder, and type I myotonic dystrophy.[4] He further determined that these impairments do not meet or equal a listed impairment.

At step three, the ALJ found that plaintiff had moderate limitations in concentrating, persisting or maintaining pace; understanding, remembering, or applying information; and interacting with others.

The ALJ found that plaintiff had the residual functional capacity (RFC) to do light work with the following limitations:

> standing or walking 4 hours in an 8-hour workday; no climbing ladders, ropes, or scaffolds; occasional climbing ramps or stairs, balancing, stooping, kneeling, crouching, or crawling; frequent fine and gross manipulation bilaterally. Capable of simple, routine tasks in a work environment free of fast paced quota requirements involving simple work-related decisions with few, if any, work place changes and no interaction with the public and

---

[4] Myotonic dystrophy is a type of muscular dystrophy. See, https://www.mayoclinic.org/ diseases-conditions/muscular-dystrophy/ symptoms-causes /syc-20375388, visited on January 22, 2019.

occasional interaction with co-workers.

Plaintiff had no past relevant work. Based on the testimony of a vocational expert, the ALJ determined that she was not disabled because she was able to do jobs that exist in significant numbers in the national economy.

## **The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. In view of plaintiff's arguments, the Court will omit a discussion of the medical treatment.

1.   Agency Forms

Plaintiff was born in 1996 and was 18 years old on the alleged date of onset. A prior application had been denied as of April 1, 2014. (Tr. 272).

2.   State Agency Consultant's Mental RFC Assessment

In January 2015, acting as a state agency consultant, Joseph Mehr, Ph.D., assessed plaintiff's mental RFC based on a review of the file contents. He used an electronic version of an agency form that is commonly used for this purpose in social security cases. (Tr. 111-112). The form consists of a series of questions and a list of mental activities. The consultant is asked to rate the applicant's limitations in these areas. The form explains that the "actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion." (Tr. 111).

Dr. Mehr answered "yes" to the question "Does the individual have sustained concentration and persistence limitations?" He rated plaintiff as "moderately limited" in ability to carry out detailed instructions; ability to maintain attention

and concentration for extended periods; and ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.

In the section entitled "MRFC-Additional Explanation," Dr. Mehr wrote that plaintiff would have "some problems satisfactorily performing detailed activities of a somewhat complicated nature. Regardless, cognitive, attentional and functional abilities are adequate for performing simple routine activities which have few social demands because of oppositionality."

3. Evidentiary Hearing

Plaintiff was represented by an attorney at the evidentiary hearing in June 2017. (Tr. 38).

Plaintiff testified regarding her symptoms, medical treatment, and daily activities. (Tr. 42-69).

A vocational expert (VE) also testified. The ALJ asked the VE a hypothetical question which corresponded to the RFC assessment. The VE identified three jobs that could be done by a person with plaintiff's RFC: sorter (DOT 521.687-086), document preparer (DOT 249.587-018), and addresser (DOT 209.587-010). The VE testified to the number of each of those jobs in the national economy. (Tr. 71-73).

Plaintiff's counsel asked the VE to identify her source for the job numbers. She testified "It is the Bureau of Labor Statistics." He did not ask any further questions about the basis for the job numbers or identify any conflict with the DOT.

At the close of the VE's testimony, the ALJ asked her whether all her

7

testimony had been "consistent with the DOT." She replied that it had been. (Tr. 74).

## Analysis

Plaintiff's second and third arguments can be swiftly disposed of.

Plaintiff argues that ALJ failed to sufficiently identify and reconcile conflicts between the VE's testimony and the DOT. She contends that the VE's testimony conflicted with information in the DOT because the hypothetical question included mental limitations that are not addressed by the DOT, i.e., the need for work-related decisions, frequency of changes, or social contact with the public or coworkers. Doc. 13, p. 14.

As was noted above, at step five of the sequential analysis, if the claimant is not able to perform her past work, the Commissioner bears the burden of showing that she is capable of performing other jobs that exist in significant numbers in the economy.

In making the step five determination, the ALJ generally relies on the DOT for information about the typical characteristics of jobs as they exist in the economy.[5] An ALJ is required to take administrative notice of job information contained in various publications, including the DOT, published by the Department of Labor. See, 20 C.F.R. § 404.1566(d)(1). The ALJ often also relies on testimony from a VE to "supplement the information provided in the DOT by providing an impartial

---

[5]The agency is developing a replacement for the DOT, referred to as the "Occupational Information System." This system will be the "primary source of occupational information SSA staff use in our disability adjudication process." This system is projected to be implemented in 2020. https://www.ssa.gov/disabilityresearch/occupational_info_systems.html, visited on February 11, 2019.

assessment of the types of occupations in which claimants can work and the availability of positions in such occupations." *Weatherbee v. Astrue,* 649 F.3d 565, 569 (7th Cir. 2011).

For each job title, the DOT specifies whether certain physical and mental activities are required, and, if so, the frequency with which they are required. The DOT does not, of course, speak to every possible aspect of the job title.

When a VE testifies, the ALJ is required to ask the VE whether there are any conflicts between her testimony and the information in the DOT; if so, the ALJ must resolve those conflicts. *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008). The ALJ asked the VE about conflicts, and none were identified.

Plaintiff argues that there was a conflict because the VE testified about limitations that are not addressed in the DOT. Plaintiff's counsel did not point out any conflict between the VE's testimony and the DOT at the evidentiary hearing.[6] Therefore, in this Court, plaintiff "now has to argue that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance, for SSR 00–4p requires only that the ALJ investigate and resolve *apparent* conflicts between the VE's evidence and the DOT." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008), citing *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006)[emphasis in original].

Defendant argues that there is no conflict at all where the VE testifies about subjects not addressed in the DOT, citing *Collins v. Berryhill*, 743 F. App'x 21 (7th Cir. 2018), reh'g denied (Sept. 24, 2018). The Court agrees. Although *Collins* is

---

[6] Plaintiff is represented by a different attorney in this Court.

nonprecedential, its reasoning is persuasive. The Seventh Circuit found that there was a conflict where the VE testified about a topic addressed in the DOT (exertional level), but there was not a conflict where the DOT was silent (sit/stand option). *Collins*, 743 F. App'x at 25-26. See also, *Zblewski v. Astrue*, 302 F. App'x 488 (7th Cir. 2008). Plaintiff has not identified any conflict, much less an apparent one.

For her third point, plaintiff argues the ALJ's decision was erroneous because the ALJ failed to establish that there was a reliable basis for the VE's testimony as to job numbers. She points out that the Seventh Circuit has expressed concern about ALJs relying on VE testimony about job numbers without any explanation of the source or accuracy of the data. Doc. 13, p. 17. However, she has not cited a case in which the Seventh Circuit found that the ALJ erred in that regard and ordered remand for that reason in the absence of an objection by the plaintiff at the hearing.

An ALJ may rely on even "purely conclusional" VE testimony that goes unchallenged. *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir.), on reh'g, 368 F.3d 691 (7th Cir. 2004). In *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016), cited by plaintiff, the Court held that the plaintiff "forfeited her argument regarding the vocational expert's testimony about the number of positions for each of the six jobs by failing to object during the hearing." Plaintiff also cites *Chavez v. Berryhill*, 895 F.3d 962 (7th Cir. 2018), but the plaintiff in that case objected to basis for the VE's testimony about job numbers. The Court held, "Before accepting a VE's job-number estimate, the ALJ, *when confronted by a claimant's challenge*, must require the VE to offer a reasoned and principled explanation."

*Chavez*, 895 F.3d at 970(emphasis added). Because plaintiff did not challenge the VE's testimony at the hearing, she cannot do so here.

Plaintiff's first argument fares better. Plaintiff argues that the RFC assessment was erroneous because it failed to account for her moderate limitation in maintaining concentration, persistence, or pace.

The ALJ's RFC assessment and the hypothetical question posed to the VE must both incorporate all of the limitations that are supported by the record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). This is a well-established rule. See, *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (collecting cases). If the ALJ finds that a plaintiff has a moderate limitation in maintaining concentration, persistence or pace, that limitation must be accounted for in the hypothetical question posed to the VE; in most cases, limiting the plaintiff to simple, repetitive tasks or to unskilled work is not sufficient to account for moderate concentration difficulties. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010).

Here, the ALJ found that plaintiff had moderate difficulties in maintaining concentration, persistence or pace at step three of the sequential analysis when determining whether plaintiff's mental impairments meet or equal a listed impairment. He noted that, while the step three determination is not a mental RFC assessment, the ultimate RFC assessment "reflects the degree of limitation I have found in the 'paragraph B' mental functional analysis." (Tr. 24).

The ALJ gave "significant weight" to Dr. Mehr's narrative explanation in the mental RFC assessment form but failed to acknowledge that Dr. Mehr opined that plaintiff had moderate limitations in ability to maintain attention and concentration

for extended periods and ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.

The Seventh Circuit has repeatedly held, with exceptions not applicable here, that a limitation to simple, repetitive tasks or unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence or pace. In *Stewart, supra,* a case decided in 2009, the Court observed, "The Commissioner continues to defend the ALJ's attempt to account for mental impairments by restricting the hypothetical to 'simple' tasks, and we and our sister courts continue to reject the Commissioner's position." *Stewart*, 561 F.3d at 685. The Court has reaffirmed that position several times in recent years. *O'Connor-Spinner, supra; Yurt v. Colvin,* 758 F.3d 850, 857 (7th Cir. 2014); *Varga v. Colvin,* 794 F.3d 809, 814 (7th Cir. 2015); *Taylor v. Colvin,* 829 F.3d 799, 802 (7th Cir. 2016); *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018).

On February 8, 2019, the Seventh Circuit issued another decision in this line of cases, *Winsted v. Berryhill*, ___ F.3d ___, 2019 WL 494052 (7th Cir. Feb. 8, 2019). The Court stated," Again and again, we have said that when an ALJ finds there are documented limitations of concentration, persistence, and pace, the hypothetical question presented to the VE must account for these limitations. [Citations omitted.] We have also made clear that in most cases 'employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace, and thus, alone, are insufficient to present the claimant's

limitations in this area.'"

In *Winsted*, at step three, the ALJ found that the plaintiff had moderate difficulty with social functioning and concentration, persistence, and pace. The RFC assessment limited plaintiff to "simple, routine, repetitive tasks with few workplace changes, no team work, and no interaction with the public." *Winsted*, 2019 WL 494052, at *3. The Court held that the hypothetical question based on that RFC assessment was erroneous because it "did not direct the expert to consider problems with concentration, persistence, and pace, which is the hypothetical the ALJ relied on for the RFC. Though particular words need not be incanted, we cannot look at the *absence* of the phrase 'moderate difficulties with concentration, persistence, and pace' and feel confident this limitation was properly incorporated in the RFC and in the hypothetical question." *Winsted*, 2019 WL 494052, at *4 (emphasis in original).

As in *Winsted*, the RFC assessment and the hypothetical question here are erroneous because they do not account for plaintiff's moderate limitation in maintaining concentration, persistence, or pace.

The Commissioner argues that the ALJ included the limitations assessed by Dr. Mehr. She also points out that the ALJ limited plaintiff to no fast-paced quota requirements. Doc. 18, p. 11. Her argument ignores the moderate limitations that Dr. Mehr assessed in ability to maintain attention and concentration for extended periods; and ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. Neither Dr. Mehr nor the ALJ explained *how* a limitation to simple unskilled work with no

13

fast-paced production requirements accommodates moderate limitations in ability to maintain attention and concentration for extended periods; and ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.

The Seventh Circuit has been very clear that a limitation to simple instructions or simple, routine tasks does not adequately account for a moderate limitation in maintaining concentration, persistence, or pace. "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620.

Further, the ALJ cannot simply ignore the consultant's answers to the questions in the first part of the mental RFC form. "Worksheet observations, while perhaps less useful to an ALJ than a doctor's narrative RFC assessment, are nonetheless medical evidence which cannot just be ignored." *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015).

The ALJ's error requires remand. "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir., 2012) (internal citation omitted).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during the relevant period, or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

**Conclusion**

The Commissioner's final decision denying plaintiff's application for disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence <u>four</u> of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE:   February 13, 2019.**

<u>**s/ Clifford J. Proud**</u>
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**